NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
                                                           )
CYNTHIA A. SIWULEC,                       )
                                                           )          Hon. Garrett E. Brown, Jr.
                        Plaintiff,               )
                                                           )          Civil Action No. 10-4193 (GEB)
            v.                                       )
                                                           )          **MEMORANDUM OPINION**
JM ADJUSTMENT SERVICES, LLC,      )
                                                           )
                        Defendant.            )
_____)

**BROWN**, Chief Judge:

          This matter comes before the Court upon the motion to dismiss (Doc. No. 10) filed by

Defendant JM Adjustment Services, LLC (JMAS).  JMAS seeks dismissal pursuant to Federal

Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The Court has considered the

parties' submissions and decided the matter without oral argument pursuant to Federal Rule of

Civil Procedure 78.  For the following reasons, the Court will grant JMAS's motion to dismiss.

*Background*

          For the purpose of this motion, the Court accepts as true the factual allegations in the

Amended Complaint and draws all reasonable inferences in favor of Plaintiff.  *See, e.g.*, *Ashcroft

v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Plaintiff Cynthia A. Siwulec, a resident of Rumson, New

Jersey, alleges that a JMAS representative personally delivered an envelope to her home on or

about May 10, 2010.  (Am. Compl. ¶ 12.)  The envelope contained a letter, bearing the name and

address of Plaintiff's home mortgage lender, Chase.[1]  The letter (1) indicated that Chase was

_____

          [1]Plaintiff previously filed a similar class action against Chase in this District.  The
Honorable Freda L. Wolfson, United States District Judge, dismissed Plaintiff's complaint in that

"deeply concerned about [Plaintiff's] past due account"; (2) reminded Plaintiff of her loan

obligations; (3) asked Plaintiff to contact Chase; and (4) informed Plaintiff to "[r]emit payment

to: Chase, P.O. Box 78036, Phoenix, AZ 85062-8036."  (Am. Compl. Ex. A.)

Plaintiff also avers that the JMAS representative dropped or discarded documents on her

lawn, which appeared to contain JMAS's standard instructions to its agents.  (Am. Compl. ¶ 16.)

The instructions indicate that the agent should "make contact with the customer," "offer [his/her]

cell phone to the customer to try to call the lender while [he/she] is at the address," and identify

the bank representative with whom the customer speaks.  (Am. Compl. Ex. B.)  The instructions

further direct the agent to make the following introductory statement if the agent makes contact

with the customer:

> Hello, I'm from J.M. Adjustment Services and I'm here on behalf of
> Chase.  They've been trying to contact you by phone and mail and have
> been unable to reach you.  As a service to their customers, Chase has sent
> me out to make contact with you so that you will contact them as soon as
> possible.

(*Id.*)  Beyond this script, the instructions tell the JMAS agent to "fill out the Field Call Summary

COMPLETELY before returning the update sheet to [JMAS].  Please indicate a neighbor's

address on each and every assignment whether the neighbor confirmed the customer's address or

not," and requires the JMAS agent to "[i]nclude a complete description of the property, whether

it is vacant or for sale and indicate any damage to the property."  (*Id.*)  The instructions further

provide that, if the customer is not available, the JMAS agent should "make a second attempt"

and "[t]ry to obtain contact information from the customer—home, cell, work phone . . . ."  (*Id.*)

On August 14, 2010, Plaintiff filed a Class Action Complaint alleging that JMAS

---

action on December 7, 2010.  *Siwulec v. Chase Home F.W., LLC*, Civ. No. 10-1875, Doc. Nos.
15–16.

violated the Fair Debt Collection Practices Act (FDCPA) by failing to comply with the disclosure requirements mandated by 15 U.S.C. § 1692e(11) and g.  Plaintiff filed an Amended Complaint on December 19, 2010.  JMAS now moves to dismiss for failure to state a claim, arguing that Plaintiff has not alleged a plausible FDCPA claim, and that, accepting Plaintiff's allegations as true, JMAS does not qualify as a "debt collection agency" subject to the requirements of the FDCPA.

### *Analysis*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and

undisputedly authentic documents if the complaint's claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

JMAS argues that, accepting the facts alleged by Plaintiff to be true, JMAS does not qualify as a debt collector under the FDCPA.  The Court agrees.

The express purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Generally speaking, the FDCPA's restrictions only apply to "debt collectors."  *FTC v. Check Investors, Inc.*, 502 F.3d 159, 171 (3d Cir. 2007); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  In construing this term, Courts have differentiated between third-party entities that provide *messenger* services, such as the delivery of a lender's collection notices, and more invasive services that constitute *indirect debt-collection attempts*.  *Compare, e.g.*, *Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142, 1145–49 (9th Cir. 1998) (concluding that courier qualified as debt collector, where the courier's automated telegram service surreptitiously collected borrowers' phone numbers and provided this information to the lender) *with Aquino v. Credit Control Servs.*, 4 F. Supp. 2d 927, 929–30 (N.D. Cal.1998) (dismissing FDCPA claim against same courier, where allegations only indicated that courier delivered a debt collection notice).  Plaintiff argues that JMAS's conduct falls into the indirect debt collection activities identified by *Romine* and its progeny, but Plaintiff's allegations

4

do not support this conclusion.

*Romine* involved Western Union's automated voice telegram (AVT) system, whereby Western Union personally delivered a notice indicating that the borrower had a "personal delivery only telegram" waiting for them if they called a certain telephone number, the borrower called the AVT system and was prompted to confirm their identity with their telephone number, and then the courier would transmit the previously unlisted telephone number to the lender. *See Romine*, 155 F.3d at 1144. A majority of the *Romine* court found that this system constituted an indirect debt collection activity subject to FDCPA requirements, because Western Union's service "[went] beyond mere information gathering or message delivery." *Id.* at 1149. In reaching this determination, the *Romine* court took judicial notice of a Federal Trade Commission interpretive letter, which opined that a similar automated phone number retrieval and dissemination service subjected the courier to FDCPA requirements, because the message served a "collection function." *Id.* at 1146–47. The court further emphasized Western Union's "curious" notification methodology, which told borrowers that they had a "personal delivery only telegram," but that the message could not be delivered until the borrower provided the telephone number to confirm the borrower's identity. *Id.* at 1148. However, the purported confirmation was a ruse for the courier to obtain unlisted contact information about the borrower, which the courier would then convey to the lender. *Id.* ("The chief purpose of the alleged 'confirmation' process is to obtain unlisted or otherwise unavailable telephone numbers which Western Union then turns over to creditors and debt collection agencies."). Additionally, the *Romine* court noted that Western Union's use of the AVT system appeared to violate Federal Communications Commission regulations that required consumers' informed consent before automated telephone services could retrieve and disseminate the consumer's telephone number and billing address.

5

*Id.* at 1149 (citing 47 C.F.R. § 64.1602(a)(2)(i)–(ii)).

The alleged debt collection activity in this case pales by comparison to the deceptive use of the AVT system at issue in *Romine*. The Amended Complaint avers that the JMAS agent committed two acts during the agent's interaction with Plaintiff: (1) the agent personally delivered the letter listed as Exhibit A to Plaintiff's home; and (2) the agent dropped or discarded documents that appear to be JMAS's instructions to agents regarding how to conduct a home visit on behalf of its lenders. Neither of these alleged actions, in and of themselves, constitute indirect debt collection activity. The letter delivered to Plaintiff clearly identified Chase and its address in the portion of the letter that typically signifies the sending party, and the letter directed Plaintiff to contact and/or remit payment to Chase. (Am. Compl. Ex. A.) The letter does not mention JMAS at all, let alone indicate that JMAS has any role with regard to the debt collection. Although Plaintiff's Amended Complaint vaguely alleges that the letter "sought financial information from plaintiff," and that "[t]he information would be used for the purpose of collecting the debt" (Am. Compl. ¶¶ 13, 14), Plaintiff does not allege facts that would indicate that JMAS—as opposed to the lender—sought information that would be used for that purpose, and the letter itself does not support such an inference. Indeed, the letter does not even appear to seek information; it directs the customer to either contact Chase or remit payment to Chase. (Am. Compl. Ex. A.) Meanwhile, the instructions that Plaintiff alleges the JMAS agent left behind does not address the customer in any way, or speak to the customer's loan obligations. Rather, the instructions direct the JMAS agent: (i) to attempt to make contact with the customer; (ii) to offer a cell phone to put the customer in contact with the lender; (3) to confirm the address with a neighbor and document the general appearance of the property; (4) and if the agent fails to make contact with the customer, to "make a second attempt" and "[t]ry to obtain contact

information from the customer—home, cell, work phone . . . ."  (Am. Compl. Ex. B.)  Unlike the courier in *Romine*, the facts alleged by Plaintiff do not indicate that JMAS used deceptive or harassing means of delivering Chase's message.[2]  Notably, Plaintiff does not allege that JMAS sought or obtained such information about her property or her personal contact information, or that JMAS conveys such information to lenders.  The documents left on her lawn, submitted as Exhibit B, do not support such inferences.  *Cf. Udis v. Universal Commc'ns Co.*, 56 P.3d 1177, 1181 (Colo. Ct. App. 2002) (adopting *Romine*'s conclusion under state debt collection law, noting that the "critical practice" that turns a messenger service into an indirect debt collection attempt was "the capture and subsequent sale of consumer telephone numbers obtained through interaction with the consumer").

Under these circumstances, the alleged delivery of the Chase letter would be nothing more than a messenger service.  *See, e.g.*, *Randle v. GC Servs. L.P.*, 48 F. Supp. 2d 835, 839–40 (N.D. Ill. 1999) (concluding that courier was not a debt collector, where, despite the inclusion of

---

[2]Indeed, if a consumer accepted JMAS's offer to use their cell phone to contact their lender, the phone call would not transmit any personal information about the consumer unless the consumer chose to disclose that information.  And while the instructions prompt the JMAS agent to "[t]ry to obtain contact information from the consumer—home, cell, work phone," the instructions do not prompt the JMAS agent to use deceptive or harassing means to accomplish this task.  Rather, the instructions expressly instruct the JMAS agent to follow an introductory script that notifies the consumer that the agent is contacting the consumer on behalf of the lender, and to entreat the consumer to contact the lender.  (Am. Compl. Ex. B.)  Importantly, Plaintiff has not alleged that the JMAS agent attempted to collect personal information from her or that she revealed personal information to the agent.  But even if the JMAS agent did attempt to gather personal information from the consumer according to the instructions, the information solicitation would not be deceptive, because the consumer would be on notice that a lender was trying to contact her.  *See Baker v. Trans Union LLC*, No. CV-10-8038-PCT-NVW, 2010 WL 2104622, at *8–9 (D. Ariz. May 25, 2010) (distinguishing *Romine* and dismissing FDCPA claims against skip tracer, concluding that skip tracer's information gathering was not deceptive because "Jane Doe at [skip tracer] merely telephoned [consumer] and asked for her address outright.  Though she did not immediately disclose the purpose of the inquiry, she did so when [consumer] prompted her for it").

the courier's name and address on the collection letter, the courier did not collect money from

debtors, debtors were not instructed to contact the courier, the courier charged a flat fee for

delivery services, and the courier did not provide followup collection services for the lender);

*Powell v. Computer Credit, Inc.*, 975 F. Supp. 1034, 1040–41 (S.D. Ohio 1997) (determining that

"computergram" was not indirect debt collection subject to FDCPA requirements, despite fact

that it was printed on courier's stationery and mailed by the courier, where the return address,

telephone number, and letter text clearly indicated that message was from the lender, and the

letter invited the borrower to call the lender about the unpaid bill).  The facts alleged by Plaintiff

do not demonstrate that JMAS acted as a "debt collector" under the FDCPA. Consequently, the

Court will dismiss Plaintiff's Complaint.

### Conclusion

For the aforementioned reasons, the Court will grant JMAS's motion to dismiss (Doc.

No. 10).  An appropriate form of order accompanies this Memorandum Opinion.


Dated: April 1, 2011


　　　　　　　　　　　　_____/s/ Garrett E. Brown, Jr._____
　　　　　　　　　　　　GARRETT E. BROWN, JR., U.S.D.J.